UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LORRAINE MARIE CRUMP                    CIVIL ACTION

VERSUS                                  NUMBER: 16-14930

NANCY A. BERRYHILL, ACTING              SECTION: "E"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

# REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based upon disability. (Rec. docs. 17, 19, 22).

On August 19, 2013, Plaintiff, Lorraine Marie Crump, filed applications for DIB and for SSI benefits, alleging disability as of April 10, 2013 due to chronic pain in the neck, shoulders, and arms; muscle spasms; migraine headaches; and insomnia. (Tr. pp. 181-187), 202-210). Plaintiff subsequently filed another application for DIB on March 5, 2014, alleging disability as of June 1, 2011. (Tr. pp. 188-189). In that application, it was reported that Plaintiff had no desire to seek SSI benefits. (Tr. p. 188). It was also reported in the "Remarks" section of the form that attempts had been made to contact Plaintiff to resolve discrepancies on the two DIB submissions regarding her marital status and receipt of long-term disability benefits. (Tr. p. 189). The administrative record additionally contains a "Disability Report – Field Office" form dated March 5, 2014 in which it was indicated that Plaintiff had filed a previous application for DIB that was denied at the initial level of the Commissioner's

administrative review process on April 10, 2013 and was not appealed further. (Tr. pp. 224-225).

On June 19, 2014, Plaintiff's "... claim for Social Security disability benefits" was denied at the initial level of the Commissioner's administrative review process. (Tr. pp. 88-91). A review of a "Disability Determination Explanation" form that preceded that initial denial confirms that Plaintiff had indeed filed a previous application for DIB on September 27, 2012 that was denied on April 10, 2013 and was not appealed thereafter. (Tr. p. 59). Plaintiff sought reconsideration of the June 19, 2014 initial denial, which was likewise denied on September 2, 2014. (Tr. pp. 92, 94-96). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on August 17, 2015 at which Plaintiff, who was represented by counsel, a Medical Expert ("ME"), and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 97, 35-57). On September 21, 2015, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("SSA"). (Tr. pp. 16-34). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on July 23, 2016, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-6). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In her cross-motion for summary judgment, Plaintiff frames the *sole* issue for judicial review in considerable detail, as follows:

1. The ALJ's step 4 denial is contrary to law and not supported by substantial evidence.

    A. There are two types of step 4 denials: able to return to work "as actually performed," and able to perform past work "as generally performed."

2

B. PAST WORK AS <u>ACTUALLY</u> PERFORMED: the actual mental demands of Plaintiff's past work exceed her RFC.

   i. The Agency's testifying expert opined that Plaintiff's mental impairments limited her to the performance of 1 to 3 step tasks.

   ii. The ALJ did not include the medical expert's supported limitation to 1 to 3 step tasks in the RFC finding, and never explained why it was excluded.

   iii. HARM: a person limited to the performance of 1 to 3 step tasks cannot perform the job of bartender as that job is described in the *DOT*.

C. PAST WORK AS <u>ACTUALLY</u> PERFORMED: Plaintiff's job as a bartender, as she performed it, required her to lift more than is contemplated by the *ALJ's* RFC, and work more than 40 hours per week, and more than 8 hours per day on many days, a job requirement also beyond the *ALJ's* RFC finding.

D. PAST WORK AS <u>GENERALLY</u> PERFORMED:

   i. The mental limitation to 1 to 3 step tasks also demonstrates Plaintiff's inability to perform her past work as a bartender as it is generally performed.

   ii. The reaching limitations described in the *ALJ's* RFC facially contradict Plaintiff's ability to perform her job as a bartender as described in the *DOT*, and the ALJ did not obtain testimony from the vocational expert regarding this inconsistency.

(Rec. doc. 17-2, p. 3).

Relevant to the multi-faceted issue to be decided by the Court are the following findings that were made by the ALJ:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since June 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: tobacco abuse, obesity, history of alcohol abuse, affective mood disorder, panic disorder, mild osteoarthrosis of the pubic symphysis, and osteoarthritis of the cervical spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant could sit, stand, and/or walk 6 hours in an 8-hour workday with normal breaks. The claimant could occasionally reach overhead with the right upper extremity. The claimant was right hand dominant. The claimant should avoid working at unprotected heights or around dangerous moving machinery. The claimant could understand, remember and carryout detailed, but not complex instructions. The claimant should avoid assembly line –forced pace work.

6. The claimant is capable of performing past relevant work as a bartender. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. pp. 21-22, 24, 28, 29)
(footnote omitted).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and

must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is therefore not disabled. *Harrell*, 862 F.2d at 475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). In determining whether a claimant is capable of performing the work that she has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. *Villa*, 895 F.2d at 1022; *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980). The assessment of the demands of a claimant's prior work "... may rest on descriptions of past work as actually performed or as generally performed in the national economy." *Villa*, 895 F.2d at 1022 (citing *Jones v. Bowen*, 829 F.2d 524, 527 n. 2 (5th Cir. 1987)). A finding that the claimant is disabled or is not disabled at any point in the five-step review process is conclusive and terminates the Commissioner's analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

As allowed by 20 C.F.R. §§404.1527(e)(2)(iii) and 416.927(e)(2)(iii), the ALJ in the present case called upon the services of a ME in an attempt to gain a better understanding of the limitations that resulted from Plaintiff's non-exertional impairments. That ME, a

psychologist, was the first witness to testify at the administrative hearing held on August 17, 2015. The entirety of his testimony is as follows:

> EXAMINATION OF THE MEDICAL EXPERT BY THE ADMINISTRATIVE LAW JUDGE:
>
> Q       Dr. Hammel, do you have any questions you want to ask prior to testifying?
>
> A       No, Your Honor.
>
> Q       Would you evaluate her impairments, please?
>
> A       Your Honor, on the mental health side of the case there's not a great deal of recent development. There is a history of major depressive disorder. There's also an anxiety disorder of some sort, most likely a panic disorder. It's nothing I think that meets or equals a listing under 12.04 or 12.06. There's been some medical stabilization at 10-F and 12-F. The treatment source had been assigning GAF's in the mid-50s, but the last assigned GAF is a 75. If I took that at face value it would be non-severe.
> I'm not sure about that, but that being the case, most of -- a lot of this case is on the physical side, about which I have no opinion.
>
> Q       Would you have any mental limits?
>
> A       Well, with GAF's between 55 and 75, I can't set many. *I think that I would preclude two things that are going to be stressful. I would preclude attention to complex work. It would limit her then to one/two/three-step and detailed. But I think the most significant one is I would preclude the stress associated with an assembly line work base.*
>
> Q       Okay. How do you evaluate the ADL's, et cetera?
>
> A       ADL is based on mental limitations and would be mild. Concentration, persistence and pace moderate, a limitation would be pace, mild in the social domain and no episodes of decompensation.
>
> Q       Any C criteria?
>
> A       Not in my opinion, Your Honor.
>
> ALJ:    Yes. Did you have any questions for Dr. Hammel?

BY THE ATTORNEY:

Q       You said the global assessment of functioning was 55?

A       It was 55 in the latest quoted [PHONETIC] lines until you've got --

Q       Oh, okay.

A       -- to 12-F –

Q       Okay

A       -- and they assigned a 75.  Obviously, I didn't take that too seriously --

Q       Okay, Yeah, did you --

A       -- or --

Q       Okay.  I thought that may have been a mistake or something?

A       I kind of wondered about that, too.

Q       Okay.

A       If I believed that, we couldn't have even gotten to Step 2.

Q       She wouldn't even be in [INAUDIBLE] lines.  I don't think that, but --

A       Well, I think that's probably -- you know, that almost has to be an error.

Q       Okay.

A       I can't speak for them, but I agree with you.

Q       Okay.

A       If there's one I can set in terms of an RFC, but --

Q       Okay.

A       -- as to your -- as you're quite aware, most of this development here is on the physical side.

Q       Yes.  Okay, I just wanted to clear that up.

A       I just had never seen that before, either.

Q	Right, me, either. Okay. That's all I had. Oh, I just have one more question, you did say she had anxiety disorder, but it was more --

A	Of some sort.

Q	-- on the panic --

A	It looks like --

Q	-- disorder side?

A	Well, panic --

Q	What's the difference between the two? There's --

A	Well, because there's not a difference.

Q	Okay.

A	Panic disorder is, that's the umbrella under which obsessive-compulsive, panic disorder, generalized anxiety disorder, it all falls under that umbrella.

Q	Okay.

A	It changes a little bit, sometimes it'll say panic disorder, then they get a little -- I mean, anxiety disorder and then they get a little more specific and say panic.

Q	Okay. Would one that has panic disorder need to have limitations with the public or being around certain people or is --

A	Well, there's not a lot in here. She does kind of avoid crowds --

Q	Yes.

A	-- but with medical stabilization, I have a hard time setting a limitation in that domain.

Q	Okay. And so by medical stabilization, you mean the medication she's on or the treatment --

A	Yeah.

Q	-- she's receiving?

9

A       She's achieving some stabilization.

Q       Okay.

A       It hasn't made it go away.

ATTY:   Yes. All right, thank you, Doctor.

ME:     Your Honor, if I may, I'm going to run next door and look at this?

ALJ:    Oh, go ahead, Doc.

ME:     Thank you. I'm going to scoot past you, but you're just fine. You don't have to move and --

CLMT:   Okay.

(Tr. pp. 37-41)
(emphasis added).

After Plaintiff took the stand and was briefly questioned by the ALJ on her age and educational background, the ALJ afforded the VE the opportunity to question Plaintiff on her past work experience, as follows:

ALJ:    Ms. Swisher, do you have any questions about her past work?

VE:     Yes I do, but it's just one brief question.

BY THE VOCATIONAL EXPERT:

Q       I noticed in '04 you were self-employed?

A       I was self-employed with a bar.

Q       Oh, okay, so you were still --

A       So all I --

Q       -- doing the bartender --

A       Yes, sir.

Q       -- work?

A    Yes, ma'am.

VE:   Oh, okay.

CLMT: I worked there 20 years.

VE:   Okay. All righty.

CLMT: And I didn't know that -- well, like seven/eight years when I was there I didn't know I had to do my taxes.

VE:   Uh-huh.

CLMT: So that's where the problem came in.

VE:   No problem, okay.

CLMT: Okay.

VE:   Thank you very much. Your Honor, she worked as a bartender. This is *DOT* code, is 312.474-010. This is a light exertional level position. It is semi-skilled, SVP 3. That would conclude her past relevant work history.

ALJ:  Okay. Now I'd like to let your representative present your case.

ATTY: Okay.

(Tr. pp. 42-43).

Subsequent to the questioning of Plaintiff by her attorney and the ALJ, the two of them posed the following queries to the VE:

ALJ:  Okay. Ms. Swisher, would you assume for me a person who could lift or carry about 10 pounds frequently or 20 pounds occasionally; stand or walk about six hours in an eight-hour day with normal breaks or sit for six; reaching overhead occasionally with the right upper extremity? Are you right-handed, ma-am?

CLMT: Yes.

(Whereupon, CHERYL L. SWISHER, the [V]ocational [E]xpert, having first been duly sworn, testified as follows:)

EXAMINATION OF THE VOCATIONAL EXPERT BY THE ADMINISTRATIVE LAW JUDGE:

Q     Is right dominant; no unprotected heights or dangerous machinery; *mentally would be able to understand and remember and carry out detailed but not complex instructions; no assembly line or forced-pace work.* Could such an individual do the past work that she described?

A     And are there any limitations on the left hand, the left? You didn't give me anything.

Q     No.

A     Okay. Yes, Your Honor, the bartender.

Q     Does your testimony conform with the *DOT*?

A     Yes, Your Honor.

ALJ:    Do you have some questions for Ms. Swisher?

BY THE ATTORNEY:

Q     Oh, Ms. Swisher, let's see, what parts of the record did you review in preparation for your testimony today?

A     The E exhibits.

Q     Okay. All right. And, answering the Judge's hypothetical, you only considered the limitations in that hypothetical and nothing outside of those?

A     Yes.

ATTY:  Okay. All right. That's all I have, Your Honor.

(Tr. pp. 55-56)<br>(emphasis added).

After considering the evidence of record, on September 21, 2015, the ALJ issued his written decision denying Plaintiff's applications for Social Security benefits. (Tr. pp. 16-34). As was noted in the fifth finding of fact/conclusion of law quoted earlier, consistent with the hypothetical question that he had posed to the VE at the administrative hearing, the ALJ

assessed Plaintiff as retaining the RFC to perform a limited range of light work that involved, *inter alia*, understanding, remembering, and carrying out detailed, but not complex, instructions and the avoidance of assembly line/forced-pace work. (Tr. pp. 24-28). This proceeding follows in the wake of the AC's denial of Plaintiff's request for review of the ALJ's decision.

As discussed above, if the fourth step in the §§404.1520/416.920 sequential analysis is reached, to determine whether or not a claimant can perform her prior work, the ALJ is required to assess the demands of the former employment and to compare those demands to the claimant's present capabilities. *Villa*, 895 F.2d at 1022. "This determination may rest on descriptions of past work as actually performed *or* as generally performed in the national economy." *Id.* (emphasis added). "If the plaintiff can perform past relevant work, either 'as-actually-performed' *or* 'as-generally-performed,' a denial of benefits at Step Four is appropriate." *Perrera v. Colvin*, No. 16-CV-1131, 2017 WL 2829695 at *8 (S.D. Tex. June 28, 2017)(citing 20 C.F.R. §404.1560(b)(2)-(3)(emphasis added)). Information about a claimant's previous work may be obtained through the claimant herself, a VE, or a vocational resource such as the Dictionary of Occupational Titles ("DOT"). 20 C.F.R. §§404.1560(b)(2), 416.960(b)(2). Although the determination of whether a claimant can perform her past work can be made by the ALJ without vocational testimony, *Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979), case law and the Social Security Regulations themselves counsel that the evidentiary value of a VE's testimony is superior to the information contained within publications like the DOT. *Laurent v. Astrue*, No. 07-CV-3831, 2009 WL 959463 at *12 (E.D. La. Mar. 26, 2009), *aff'd*, 366 Fed.Appx. 559 (5th Cir. 2010). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including

working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1985). "A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Id.* The Fifth Circuit has specifically instructed that "... DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). *See also Lawler v. Heckler*, 761 F.2d 195, 197-98 (5th Cir. 1985); *Dellolio v. Heckler*, 705 F.2d 123, 126-28 (5th Cir. 1983).

In resolving Plaintiff's challenge to the Commissioner's decision, the Court notes at the outset that the only mental disorder/symptom that Plaintiff identified as a disabling condition in her applications for Social Security benefits and related paperwork was insomnia. (Tr. pp. 181, 203, 227). She did not identify as a disabling condition any mental impairment(s) that limited her ability to work. *Guerin v. Shalala*, 29 F.3d 623, 1994 WL 395077 at *4 (5th Cir. 1994)(table)(citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)). Despite that omission, in discharging his duty to make a sufficient inquiry into Plaintiff's claim for benefits, the ALJ called upon the services of the ME in the field of psychology to offer his opinions on the limiting effects of Plaintiff's non-exertional impairments. As reflected in the administrative hearing transcript excerpts quoted earlier, in response to the ALJ's inquiry regarding the existence of any mental limitations, the ME testified that Plaintiff was limited "... to one/two/three step and detailed" work. Plaintiff reads the ME's testimony as embracing both a "number-of-steps-in-a-task" requirement as well as a requirement regarding the difficulty of the task being performed. However, an equally plausible – and

14

indeed fairer – reading of the ME's testimony in its entirety was that he felt Plaintiff was precluded from performing two classes of "stressful" work – complex work and assembly-line work – but that she was otherwise capable of performing work all the way up to the "detailed" range. Notably, despite being tendered to Plaintiff's counsel for cross-examination, the ME was asked no specific questions about the extent of the limitations he had just testified to.

Later in the administrative hearing, because he believed that Plaintiff was limited to less than a full range of light work, the ALJ properly relied upon the testimony of a VE to determine what work Plaintiff was capable of performing. *Malley v. Astrue*, No. 11-CV-0614, 2012 WL 520168 at *7 (E.D. La. Jan. 30, 2012), *adopted*, 2012 WL 520146 (E.D. La. Feb. 15, 2012). Consistent with his interpretation of the ME's earlier testimony, the ALJ posed a hypothetical question to the VE that assumed an individual who could perform a limited range of light work that included the ability "… to understand and remember and carry out detailed but not complex instructions; no assembly line or forced-pace work" and involved only occasional overhead reaching with the right upper extremity. (Tr. pp. 55-56). Faced with that hypothetical question, the VE testified that the described individual could perform Plaintiff's past work as a bartender. (*Id.*). Once again, despite being tendered to Plaintiff's counsel for cross-examination, the VE was not specifically asked whether Plaintiff's past bartending work could still be performed if, in addition to being limited to "detailed" work, the individual described in the hypothetical question was also limited to work that involved tasks of three steps or less. Plaintiff should not now be heard to complain of the adequacy or completeness of the ALJ's hypothetical question to the VE when it was not deemed important enough to merit adversarial development in the administrative proceedings

below.  *See*, *e.g.*, *Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002); *Carey*, 230 F.3d at 146-47; *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *Perrera*, 2017 WL 2829695 at *9; *Johnson v. Astrue*, No. 11-CV-3030, 2012 WL 5472418 at *14-16 (E.D. La. Oct. 5, 2012), *adopted*, 2012 WL 5472303 (E.D. La. Nov. 9, 2012)(and cases cited therein).

An ALJ may properly rely on the testimony of a VE if the hypothetical question posed to the VE incorporates reasonably includes all disabilities recognized by the ALJ and the claimant is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the VE any purported defects in the hypothetical question. *Bowling*, 36 F.3d at 436; *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  In the present case, the ALJ posed a hypothetical question to the VE which included an ability to perform detailed work consistent with the ME's earlier testimony that Plaintiff would only be precluded from "… two things that are going to be stressful" – complex work and, most significantly, assembly line work.  (Tr. pp. 55, 38).  Although given the opportunity to suggest to the VE any additional limitations that she believed were omitted from the hypothetical question, Plaintiff chose not to do so.  In order to find that there is "no substantial evidence" supporting the ALJ's interpretation of the ME's testimony, his subsequent formulation of the hypothetical question to the VE, and his RFC assessment, the Court would have to conclude that there is a "… conspicuous absence of credible choices" in the evidence that the ALJ was presented.  *Dellolio*, 705 F.2d at 125 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)); *Thompson v. Shalala*, No. 90-CV-2459, 1993 WL 323126 at *3 (E.D. La. Aug. 18, 1993).  Plaintiff has not met that weighty burden here and the task of resolving conflicts in the evidence lies with the Commissioner through the ALJ in the first instance.  *Patton*, 697 F.2d at 592.  In addition, the ALJ's inclusion in the hypothetical question of a limitation to only

occasional overhead reaching with the right upper extremity did not render the question suspect as such a limitation in *both* extremities is not preclusive of bartending work.[1] *Santana v. Astrue*, No. 10-CV-0119, 2010 WL 3928501 at *1, 7 (W.D. Tex. Oct. 5, 2010). Faced with much of the same documentary evidence that was later considered by the ALJ, the state-agency medical consultants, highly qualified physicians with expertise in Social Security proceedings whose opinions must be considered by the ALJ, 20 C.F.R. §§404.1527(e)(2)(i) and 416.927(e)(2)(i), also concluded that Plaintiff retained the RFC to perform her past work as a bartender. (Tr. pp. 58-68). Because the ALJ's hypothetical question to the VE adequately accounted for the restrictions reasonably warranted by the evidence, the ALJ was justified in relying on the VE's testimony in deciding job availability for a person with Plaintiff's limitations. *Perrera*, 2017 WL 2829696 at *10 (citing *Masterson*, 309 F.3d at 273-74). As this is a fourth-step case, the burden of proving an inability to perform former work remained with Plaintiff at all times. *Villa*, 895 F.2d at 1023. That burden has not been satisfied here.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error,

---

[1] The DOT's definition of bartending work contains a requirement of frequent reaching but makes no mention whatsoever of *overhead* reaching. DICOT 312.474-010, 1991 WL 672698 at p. 3.

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[2]

New Orleans, Louisiana, this 21st day of September, 2017.

```
                              _____
                                    MICHAEL B. NORTH
                              UNITED STATES MAGISTRATE JUDGE
```

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.